In re SCHUETZE.

(District Court, W. D. New York. May 13, 1924.)

No. 4330.

1. **Criminal law** ⟾394—**Evidence illegally secured by police officers not inadmissible in federal prosecution.**

Evidence secured independently by state police, though through an illegal search and seizure, may nevertheless be used in a prosecution in a federal court.

2. **Criminal law** ⟾394—**United States** ⟾36—**Police officers, who act in aid of prohibition agents, become federal agents.**

State police, who act under an arrangement with, and, in aid of, prohibition agents, become agents of the United States government, and subject to the federal Constitution and laws governing the right of search and seizure, and evidence secured through a search by them without a warrant may not be used in a federal prosecution, though the search was authorized for different purposes by a local statute or ordinance.

On petition of August Schuetze for order directing the return or destruction of certain evidence. Granted.

Irving I. Beckler, of Buffalo, N. Y., for petitioner.

William J. Donovan, U. S. Atty., of Buffalo, N. Y. (Thomas Penney, Jr., Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for the United States.

HAZEL, District Judge. There was filed in this court a petition praying for an order directing the return, destruction, or suppression of certain intoxicating liquors acquired on an illegal search and seizure at the premises of the petitioner, No. 36 East Mohawk street, in this city, by Detective Edwards and several policemen on the 24th day of January, 1924, without a warrant. The material facts show that on entering the building, which was occupied by petitioner on the first floor as a restaurant and soft drink place, second floor by him and his family as a private dwelling, and other parts downstairs devoted to business purposes, two rooms upstairs being occupied by lodgers, the detective handed to one Speidel, an employee of petitioner in the soft drink place, a letter reading as follows:

---

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Department of Public Safety, City of Buffalo, N. Y.    Police.
"Charles F. Zimmerman,                                John S. Marnon,
    "Chief of Police.                                  Deputy Chief.
"Detective Charles H. Edwards,                        January 24th, 1924.
    "Vice Squad.

"Sir: In accordance with chapter XXIII, section 13, of the Ordinances of the City of Buffalo, you are hereby directed to make a search of the premises at No. 46 East Mohawk St., conducted by Walter Schuetz, and to take a sample of each kind of beverage that may be found upon said premises. This search is to be made in the interest of public safety and good order of the city of Buffalo.

"Respectfully,                    Charles F. Zimmerman, Chief of Police.
"Approved:  Frank X. Schwab, Mayor."

A search of the storeroom, basement, and rear part of the premises was at once made pursuant to such authority, and samples of beverages seized, and the employee of petitioner placed under arrest and taken to police precinct No. 3, where he gave bail for his appearance before a United States commissioner, by whom on the next day he was arraigned and required to furnish bail in the amount of $25,000. Thereafter he was held to await the action of the grand jury and furnished a new bond in the sum of $25,000. The petitioner, upon learning that his employee had been apprehended and samples of liquor seized, voluntarily appeared before the United States commissioner, was arrested, and arraigned on a charge of unlawfully possessing intoxicating liquors in violation of the National Prohibition Act. His bail was fixed at $25,000, and at a subsequent hearing he was held for action by the federal grand jury, and a new bond of $25,000 required. At the preliminary hearing it was testified by Officer Edwards that he made the search and seizure on order of the chief of police and the mayor. It is not claimed that there existed a violation of law in the presence of the police officers, or that probable cause existed for believing that the statute was being violated in the place visited by the officers. The beverage liquors seized were delivered to the federal chemist, and it is alleged are now in the custody of the United States attorney. The record contains no denial of this course of procedure.

No oath, affirmation, or deposition was filed with any United States commissioner or other officer authorized to issue search warrants, as required by the Fourth Amendment of the Constitution of the United States or by the Civil Rights Act of the state. In a conversation had with Detective Edwards at the office of the mayor, the attorney for petitioner was informed, as his affidavit shows, that previous to the search and seizure in question he had a conversation with the general prohibition agent of the federal prohibition force for this district, and was advised by him that the police of the city had the right to make searches and seizures without a search warrant, under a local ordinance, and requested him to co-operate with the federal enforcement officers in detecting violations of the National Prohibition Act, and informed him that he could make a search of premises without a search warrant without the formality required by federal officers. It also appears that the attorney for the petitioner had a conversation with the mayor, who, by virtue of his office as commissioner of public safety, has supervision and control of the operations of the police depart-

ment, and was told that verbal agreement existed with the federal authorities relating to the enforcement of the statute in question and in discovering violations thereunder. The verity of the affidavit and statements therein are not challenged. The ordinance of the city to which reference has been made regulates the licensing of premises to be used for the sale of soft drink beverages, and authority is thereby given to enter upon licensed premises for the purpose of making seizure of samples of beverages found. No warrant based upon probable cause and oath in support thereof is required. It was passed in the interest of public safety and good order, and it will be assumed is a valid enactment of police power to insure licensing of these drinking resorts and preserving orderly conduct therein.

[1] It is contended by petitioner that the ordinance could not legally be used to discover liquor violations, and also that the relationship and understanding existing between Police Officer Edwards, the mayor, and the general prohibition agent of this district were such as to constitute the policemen participating in the search and seizure agents of the government, and therefore the search and seizure was in violation of the fundamental law of the land. This contention, on principle and authority, must be sustained. The Supreme Court of the United States has emphatically held that the constitutional inhibitions, the Fourth and Fifth Amendments, are not directed against the conduct of state officials, either as such or as individuals, and accordingly it follows that, when a search and seizure and arrest for federal violation is made by state police on their own initiative and without cooperation with any agency of the United States, or when the arrest or seizure of property is entirely independent of the United States government or its officials, the evidence, though procured by the misconduct of the police, may nevertheless be used in prosecutions in a federal jurisdiction. Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Adams v. N. Y., 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Park v. U. S. (C. C. A.) 294 Fed. 776; Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Kirkley v. U. S. (C. C. A.) 283 Fed. 34; Youngblood v. U. S. (C. C. A.) 266 Fed. 795; U. S. v. Falloco (D. C.) 277 Fed. 75; Flagg v. U. S., 233 Fed. 481, 147 C. C. A. 367; Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159; Legman v. U. S. (C. C. A.) 295 Fed. 474. This principle finds cogent support in the language of the Supreme Court (Adams, Flagg, and Burdeau Cases, supra), wherein it was reaffirmed that a trespasser may testify to facts observed by him, or put in evidence property found by him while trespassing, and, though he may be liable civilly or criminally for the trespass, his testimony is nevertheless competent and available to the government.

[2] Raiding methods of search and seizure to procure evidence without warrant find no support in the basic law of the land, and if government agents are permitted to prearrange with the local police department, as they did in this case, that premises of citizens suspected of violating the Volstead Act (Comp. St. Ann. Supp. 1923, §

10138¼ et seq.) should be visited and searched without warrant for the purpose of using incriminating evidence for prosecutions in the federal courts, then the protection of the Fourth and Fifth Amendments, declaring the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and against self-incrimination, become empty phrases and of shadowy effect. A similar situation was presented in U. S. v. Falloco, supra, and Judge Van Valkenburgh in a well-considered opinion held that state police, under similar facts as here, became recognized agencies of the federal government in the enforcement of the prohibitory laws, and that their acts, arrests, searches, and seizures in consequence came under the limitations imposed by the federal Constitution.

In the Flagg Case, decided in 1916 by the Circuit Court of Appeals for this circuit, it was held that a search and seizure was unreasonable and in violation of constitutional rights, where books and papers were seized without a warrant by a local policeman and taken by him to the post office, and there delivered to the United States attorney, who discovered information for an indictment against the defendant. The learned court disagreed with the contention of the government that the search and seizure by the policeman was regular, and said that the facts showed that he acted for the federal officials, and since the federal government alone was interested in prosecutions for violations of using the mails to defraud, the defendant could not be convicted of that offense upon proof obtained from documents which had been taken from him by force and without legal authority.

Although in this state there is no concurrent prohibitory law, it was and is, nevertheless, the duty of local police officers equally with federal officers to enforce all laws passed by Congress (R. S. § 1014 [Comp. St. § 1674]): Hauerstein v. Lynham, 106 U. S. 490, 25 L. Ed. 628); and since at the time of the seizure the officers engaged therein were co-operating with federal officials, they were required to strictly comply with the Constitution and laws of the United States. It makes no difference that the federal agent of this district was unaware of the specific search, or that he gave no instructions to the detective or policeman in relation thereto. It is enough that there was a general arrangement or understanding, express or implied, or an acquiescence to search premises pursuant to the ordinance of the city or directions of the police department and use the evidence and discovery for prosecution in the federal courts.

The government, in opposition to these views, attaches importance to Park v. U. S., supra, and Timonen v. U. S. (C. C. A.) 286 Fed. 935. I have read these decisions, but I do not believe them apposite. In the first-mentioned case the decision of the court apparently was based upon a seizure without warrant of intoxicating liquor contained in an automobile by police officers assisted by federal officers for violation of the state law of New Hampshire, which declared that possession or transportation of intoxicating beverages was prima facie illegal. The defendant was not taken by the police to a United States commissioner as in this case, nor was the liquor turned over to federal

officers for prosecution in a federal court. If such had been the case, the court said:

"There would be some ground for saying that the arrest and seizure were made by federal officers acting under federal authority."

There are other facts unnecessary to recite that clearly distinguish the case from this.

In the Timonen Case the court held that there was no evidence that the state police were acting by federal authority, and the existence of co-operation by the state police with federal agents and simply turning over to them certain cases that were not tried in the state court, which the police thought appropriate for prosecution under the Volstead Act, did not establish that they represented the United States in making arrest and seizure. "Their acts," as the court said, "were equally pertinent to the enforcement of the Michigan statute." It is manifest, I think, that in the cited instances the state police were not acting primarily for the national government.

Stress is also laid on U. S. v. Peterson (D. C.) 268 Fed. 864, and U. S. v. Viess (D. C.) 273 Fed. 279, but in both cases there were state prohibitory laws concurrent with article 18 of the Constitution. This concurrent power, however, the court held the state could not delegate to municipalities, and ordinances prohibiting liquor traffic must be in harmony with the existing state law, and in the Viess Case it is to be noted that the searches and seizure by local officers were pursuant to a search warrant under the state statutes. In this state, as heretofore noted, there is no prohibition statute, and the defendants were evidently not arrested for violation of the ordinance of the city, but were taken to a United States commissioner for hearing, charged with the violation of the Volstead Act, and accordingly it was an essential prerequisite that the search and seizure required a compliance with the provisions of the federal Constitution and laws.

It is not to be assumed from anything that has been said that the federal government has not the legal right to accept evidence from policemen and informants generally, regardless of their position or office, and indeed such services and aid to curb trafficking in intoxicating beverages is deserving of approval by the community; but nevertheless, in detentions and seizures without a warrant, they are required to proceed on their own initiative or acquire the facts incidentally in the discharge of their duties, unconnected with any arrangement or understanding with governmental authorities that the evidence may, be secured in ways at variance with the provisions of the Constitution and laws of the United States. Warrants are available to every person when it is shown to the satisfaction of a United States commissioner or other authorized officer under oath that probable cause exists for issuance.

The search and seizure involved herein, made by peace officers without warrant, does not permit using the evidence seized upon the trial of the accused. Appropriate orders may be entered.